**In re Yvonne NADEAU, a.k.a. Yvette Noel Dossier, a.k.a. Yvonne Lynn Hawkes.**

No. C3–87–582.

Court of Appeals of Minnesota.

June 9, 1987.
Review Denied Aug. 12, 1987.

Peter M. Rosene, Thomas R. Haugrud, Rutman, Rosene & Haugrud, St. Paul, for appellant Yvonne Nadeau.

Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and LESLIE, JJ.

## OPINION

POPOVICH, Chief Judge.

Yvonne Nadeau seeks review of a March 1987 commitment as a mentally ill person, arguing there was insufficient evidence to show she is dangerous to herself or others. We affirm.

## FACTS

Yvonne Nadeau has been committed as a mentally ill person on two prior occasions. In 1985, when this court reviewed the second commitment, we held the evidence was insufficient to support the finding Nadeau posed a substantial likelihood of harm to herself or others. *In re Nadeau*, 375 N.W.2d 85 (Minn.Ct.App.1985). Nadeau now argues the findings and order for her third commitment are similarly flawed.

Steven Johnson filed a petition for Nadeau's commitment on January 14, 1987. Nadeau has persistently claimed she and Johnson are married. Johnson first met Nadeau in 1980, when she worked as a secretary at the school he attended. After Nadeau left that employment, she began calling and writing Johnson at his parents' home. Johnson testified he told Nadeau he was not interested in a relationship with her. Johnson eventually obtained a temporary restraining order and a temporary injunction requiring Nadeau "to absolutely refrain and desist * * * from engaging in any communication with [Johnson] or from making representations that [she and Johnson] are married * * *." Nadeau was found in contempt and incarcerated for violating the injunction in 1986.

Steven Johnson married Louise Fancher in April 1986. Johnson testified Nadeau repeatedly called police to report fictitious crimes occurring at his home. By January 1987, Nadeau was phoning Johnson's home up to 20 times per day. Nadeau called Johnson's wife an adulteress, claimed that Johnson was being "sexually abused and perverted" and insisted Fancher leave her

(Nadeau's) husband alone. Nadeau often left messages on the couple's answering machine, including "suggestions" that Fancher's sexual organs be surgically removed.

Johnson testified numerous clergy, art galleries, and friends had called him in response to Nadeau's claims she is his wife. Nadeau obtained credit cards in Johnson's name, listing herself as Mrs. Steven Johnson. Johnson believed Nadeau's anger and behavior had increased and appeared to be directed at Fancher. Johnson felt Nadeau posed a danger to him and to his wife and was unable to function. Johnson viewed Nadeau's statements that the Lord had prepared a place for them to be together as a threat, and he was concerned Nadeau might harm him or Fancher.

Louise Fancher described a visit by Nadeau to a store where Fancher worked part-time. Nadeau screamed Fancher was an adulteress and told her to stay away from "her" husband. The phone calls from Nadeau in January 1987 often advised Fancher to get out of the apartment, and sometimes stated it was the last warning Fancher would receive. Fancher testified Nadeau's calls became increasingly angry, obscene, and sexually explicit. Nadeau accused Fancher of hurting Johnson and injecting him with drugs.

Michael Lee, an assistant manager of a Perkins restaurant, testified Nadeau frequently came in alone, asked for a table for two, claimed she and her husband Steve were getting back together, and was unable to pay for food which she ordered. In mid-January 1987 Lee told Nadeau not to return to the restaurant. Nadeau had also left credit cards in Johnson's name, in lieu of payment, on occasion.

Kenneth Burns, night manager of a Holiday Inn, testified Nadeau stayed there from January 4 through January 7. She said her husband, Steven Johnson, would pay the bill, and she left without paying. Hotel records revealed Nadeau had made numerous calls to Johnson's home telephone during her stay.

Ruth Bidinger, pastoral care coordinator at North Heights Lutheran Church, and Susan Priebe, pastoral care secretary, also testified. Bidinger described Nadeau's frequent attempts to hide in the church overnight. She testified Nadeau's physical appearance had deteriorated and she had a very strong body odor. The church custodian had to search the entire building for Nadeau after he detected the odor. On February 5, 1987 Nadeau was discovered hiding inside an altar. On February 9 Nadeau apparently spent the night in the church's mothers' room. Bidinger testified the odor was so bad the next day the room required fumigation. Nadeau had become more belligerent. Her frequent use of a telephone in the church led to the practice of removing the phone from the wall whenever Nadeau was known to be in the building.

Bidinger also testified Nadeau did not appear to provide food for herself except by attending church functions, including funerals, to eat. Nadeau was warned to stay away from such functions unless she had a legitimate role as a participant. Nadeau refused all assistance to obtain permanent housing and counseling. The church advised it would not offer Nadeau more food and shelter unless she cooperates with those efforts.

Bidinger believed Nadeau could become more violent, based on her escalating delusions. She testified Nadeau summoned police to the church by claiming Bidinger and the church were "sexually abusing" Johnson.

Priebe confirmed Nadeau's increasing agitation from October 1986 to early 1987 and testified Nadeau was unable to provide needed food and shelter for herself or to care for her personal hygiene. Priebe felt threatened by Nadeau's frequent angry outbursts at the church.

Jeffrey Nadeau, appellant's brother, testified he was concerned his sister cannot care for herself. He was unsure if she was dangerous to others, but believed she was extremely vulnerable. She has slept in the common bathroom and hallways of the fourplex in which their mother lives and would not cooperate with voluntary treatment of her mental illness. Jeffrey Na-

deau also noted his sister's persistent delusions about Steven Johnson.

Licensed consulting psychologist Don Anderson was appointed, at the request of Yvonne Nadeau's counsel, to examine her. He previously examined Nadeau before her first and second commitments and reported her extensive delusional system remained firmly in place when he examined her on February 23, 1987. Anderson diagnosed Nadeau as suffering from chronic paranoid schizophrenia. The illness has caused her thoughts and perceptions to be disturbed. Although Anderson recognized Nadeau's prior ability to survive "by unconventional means," he seriously questioned her continued ability to do so, and believed her basic needs were not being met.

Anderson testified Nadeau was dangerous to herself. As a result of her escalating moods and increasingly serious actions, such as excessive telephoning, the making of threats, and repeated violation of the court orders to have no contact with Johnson, Anderson believed there was a possibility Nadeau could become violent, even though she had not harmed others in the past.

The court appointed examiner was psychiatrist Hildegard Graber. On February 23, Dr. Graber also diagnosed Nadeau as suffering from chronic paranoid schizophrenia in an acute phase. Dr. Graber testified the illness has had a "devastating" effect on Nadeau, causing her to antagonize others, become increasingly isolated, and be unable to care for her basic needs for food, appropriate clothing and shelter. Graber said Nadeau was actively psychotic, out of touch with reality, and acting upon delusions regarding Johnson when she calls him. Graber was concerned by the frequency and intensity of Nadeau's actions toward Johnson and his wife, and the obvious effect on them. Despite the fact Nadeau has not yet "been physically assaultive," Graber testified she "would say that no one can predict the future" and there is the potential for actual violence.

Nadeau testified she was being persecuted and is not mentally ill. She claimed Fancher was "an insane person" and John-

son had initiated contact with Nadeau because he considered "coming back" to her and leaving Fancher. Nadeau admitted sending taxicabs to Johnson's home at night and obtaining credit cards in his name. She confirmed she stayed at the Holiday Inn without paying the bill. Nadeau claimed to have arranged for an apartment in Little Canada, but refused to give the location to the court because her "family's [been] persecuted by religious zealots from Steven Johnson's family."

The trial court also received in evidence transcripts of messages left on Johnson's answering machine, a recording of those messages, medical records, and letters and cards written by Nadeau to Johnson. The recent correspondence included two Valentine cards addressed to "Daddy Steve Johnson" and signed by "Son Johnson", both postmarked on February 4. There were three additional letters, all postmarked on February 12, which were addressed to Johnson as "White Knight".

The trial court found Nadeau a mentally ill person, she has harassed and threatened Johnson and his wife, she has repeatedly violated court orders prohibiting contact with Johnson, she is not providing for her own needs, and she is a danger to herself and others. The trial court directed Nadeau be committed to the St. Paul-Ramsey Medical Center and Anoka Metro Regional Treatment Center. This appeal followed.

## ISSUE

Is the finding that Nadeau is a mentally ill person clearly erroneous?

## ANALYSIS

Commitment orders must be supported by specific findings. Minn.Stat. § 253B.09, subd. 2 (1986). The findings will not be disturbed on appeal unless clearly erroneous. Minn.R.Civ.P. 52.01.

The statutory definition of a mentally ill person requires the proposed patient have a substantial psychiatric disorder * * * which (a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and (b) poses a substantial like-

lihood of physical harm to [the patient] or others as demonstrated by (i) a recent attempt or threat [of harm], or (ii) a failure to obtain necessary food, clothing, shelter or medical care, as a result of the impairment.

Minn.Stat. § 253B.02, subd. 13 (1986).

The expert witnesses unanimously agreed Nadeau suffers from chronic paranoid schizophrenia, a substantial psychiatric disorder, and that determination is not challenged on appeal. Nadeau focuses on the requirement that a substantial likelihood of physical harm or endangerment be shown.

The trial court found Nadeau had threatened Fancher with bodily harm, she was unkempt and dirty at the time of the court-ordered examinations, she had not been providing for her own food, clothing, shelter, safety and medical care, and she was extremely vulnerable because she was not eating regularly and slept wherever she could. There was no credible evidence Nadeau could meet her needs for safe shelter, food, and clothing in the near future. The record amply supports the trial court's commendably detailed findings and its conclusion.

When this court reviewed Nadeau's second commitment, we observed the lack of evidence at that time "to indicate that Nadeau was a danger to herself." *In re Nadeau*, 375 N.W.2d 85, 87 (Minn.Ct.App. 1985). When examined before that commitment proceeding, Nadeau was appropriately dressed and fed and had recently obtained shelter at a residential halfway facility. Then, "[all witnesses agreed that Nadeau posed no danger to others." *Id.* "There was no evidence that the resources used by Nadeau in the past to meet her needs for food, clothing, shelter, and medical care [would] be unavailable to her in the future." *Id.* Now, the record clearly shows Nadeau cannot care for herself, has nowhere to stay, is increasingly isolated, and has repeatedly threatened others. The evidence indicates that Nadeau has become dangerous and can no longer "live safely in freedom." *See O'Connor v. Donaldson*, 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45

L.Ed.2d 396 (1975), *quoted in In re Nadeau*, 375 N.W.2d 85, 87 (Minn.Ct.App. 1985).

## DECISION

The commitment of Yvonne Nadeau is supported by the record.

Affirmed.